UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| D.F.,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 3:23-cv-01106-LB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 11, 15 |

**INTRODUCTION**

The plaintiff seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his claim for social-security disability insurance benefits under Title II of the Social Security Act.[1] The plaintiff moved for summary judgment, the Commissioner filed a cross-motion for affirmation of the Commissioner's decision, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision without oral argument. The court grants the Commissioner's motion and affirms the Commissioner's decision.

---

[1] *See generally* Mot. – ECF No. 11. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*; Cross-Mot. – ECF No. 15; Reply – ECF No. 16.

ORDER – No. 23-cv-01106-LB

# STATEMENT

The following facts are undisputed.

On November 24, 2020, the plaintiff protectively filed an application for supplemental security income, alleging disability beginning January 1, 2020.[3] At the time the plaintiff filed his application he was 31 years old, had a limited education, and no past relevant work.[4] The administrative law judge (ALJ) initially denied the plaintiff's claim on March 3, 2021, and again on reconsideration on August 31, 2021.[5] After both denials, the plaintiff filed a written request for hearing on September 16, 2021.[6]

On January 11, 2022, the ALJ held a telephone hearing due to the extraordinary circumstances presented by the COVID-19 pandemic.[7] At the hearing, the plaintiff and a vocational expert (VE) testified.[8] Separately, the plaintiff's mother submitted a questionnaire and function report about the plaintiff.[9]

Following the telephone hearing, on March 1, 2022, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act since the application was filed.[10] The ALJ claims to have considered the entire record in making her decision.[11]

First, the ALJ concluded that the plaintiff was not engaged in substantial gainful activity since he filed his application.[12] Second, the plaintiff was found to have severe impairments of schizophrenia and cannabis use disorder.[13] Third, the ALJ determined that the plaintiff did not

---

[3] AR 39, 158, 282. Administrative Record (AR) citation refer to the page numbers in the bottom hand corner of the AR.

[4] AR 48. The plaintiff "was born on November 22, 1989." AR 48.

[5] AR 36, 39, 49, 62, 71, 90–91, 93, 107, 282.

[6] AR 39, 50–51, 117, 156, 161.

[7] AR 14, 39, 151.

[8] AR 14–35.

[9] AR 232–47.

[10] AR 39.

[11] AR 41, 49.

[12] AR 41, 49.

[13] AR 41, 49–50.

have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.[14] Fourth, the ALJ found that the plaintiff had a residual functional capacity (RFC) to perform a full range of work at all exertional levels but with limitations.[15] The ALJ limited the plaintiff's RFC as follows:

> He is able to perform simple routine tasks and make simple workplace decisions. He is able to have occasional interaction with supervisors and co-workers, but only brief and superficial interaction with the public in a setting that does not require routine direct interaction with the public. He requires a workplace with little change to the setting and routine.[16]

Finally, after considering the plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that the plaintiff could perform.[17] The ALJ thus concluded that the plaintiff is not disabled.[18]

On January 23, 2023, the Appeals Council denied the plaintiff's request for review and the ALJ's decision became the final administrative decision.[19] The plaintiff filed this action on March 13, 2023.[20] All parties have consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[21]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence is such relevant

---

[14] AR 42–44.

[15] AR 44–48.

[16] AR 44.

[17] AR 48.

[18] AR 49.

[19] AR 1, 7, 289.

[20] Compl. – ECF No. 1.

[21] Consents – ECF Nos. 6, 7.

evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (cleaned up). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i).
>
> **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(a)(4)(ii).
>
> **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. See 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

## ANALYSIS

The plaintiff seeks summary judgment on the following grounds: (1) the ALJ erred in determining that the plaintiff's alleged borderline intellectual functioning was not a medically determinable impairment; (2) the ALJ erred in discrediting the plaintiff's testimony; and (3) the ALJ erred in discrediting the plaintiff's mother's testimony. The court denies the plaintiff's motion for summary judgment and affirms the ALJ's decision.

**1. Step-Two Inquiry**

At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ must consider the record as a whole, including evidence that both supports and detracts from his final decision. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). An impairment is not severe if it does not significantly limit the claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Id.* § 404.1522(b). To determine the severity of a mental impairment specifically, the ALJ must consider four broad functional areas: (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).

"[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id*. (cleaned up) (first citing SSR 85-28; then citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

The issue here concerns when an impairment is medically determinable. Medically determinable impairments are "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Tomasek v. Astrue*, No. C-06-07805 JCS, 2008 WL 361129, at *14 (N.D. Cal. Feb. 11, 2008). That is, the impairment must "be established by medical evidence that consists of signs, symptoms, and laboratory findings, and not only by an individual's statement of symptoms." *Id.* Given that step two is a de minimis screening device, the plaintiff's burden on these points is "low." *Id.* at *13.

The ALJ reasoned that "there [were] insufficient clinical, diagnostic and laboratory findings to establish a medically determinable impairment of borderline intellectual functioning." Although "[a] mental consultative exam diagnosed the [plaintiff] with [the] impairment based upon psychometric testing" showing "FSIQ of 74." The ALJ essentially gave little weight to that diagnosis due to other evidence in the record, such as that the plaintiff earned C grades in high school and the plaintiff's mother's testimony that he regularly reads books.[22]

Especially given the plaintiff's low burden, the ALJ's conclusion that the borderline intellectual functioning impairment is not medically determinable was error. *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1053 n.3 (C.D. Cal. 2010) ("an IQ of 70–85 signifie[d] borderline intellectual functioning" in previous versions of the Diagnostic & Statistical Manual of Mental Disorders). But it was harmless error: in formulating an RFC, the ALJ considered the functional mental limitations discussed by the same doctor (Dr. Stenbeck) who conducted psychometric testing and

---

[22] AR 42.

diagnosed borderline intellectual functioning.[23] *Young v. Saul*, No. 19-CV-01965-PJH, 2020 WL 3506805, at *14 (N.D. Cal. June 29, 2020) ("[F]ailing to list borderline intellectual functioning [at step two] is harmless as long as [the ALJ] discussed all medically determinable impairments when assessing plaintiff's RFC."). The ALJ partially credited those limitations and limited the RFC to "simple routine tasks" and "simple workplace decisions." The Court thus denies the plaintiff's motion on this ground.

**2. The Plaintiff's Testimony**

The plaintiff next argues that the ALJ failed to provide clear and convincing reasons for discrediting his symptom testimony.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112, *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020). "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*; *see also* 20 C.F.R. § 404.1529(a). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Molina*, 674 F.3d at 1112 (cleaned up).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (in order to have a meaningful appellate review, the ALJ must explain its reasoning; "[g]eneral findings are insufficient"); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (cleaned up); *see also* 20 C.F.R.

---

[23] AR 45–46.

§ 416.929. And the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

Here, the ALJ provided specific, clear and convincing reasons at step two, including that the plaintiff's schizophrenia is well-managed with medication and mental-status exams showed no particular deficits. The court denies remand on this ground.

### 3. Third-Party Testimony

Finally, the plaintiff argues the ALJ had a duty to address the plaintiff's mother's statements and could not dismiss these statements without germane and specific reasons.[24] The Commissioner responds that under the revised regulations that took effect in 2017, the ALJ was not required to articulate how she considered evidence from a nonmedical source.[25] "Under the regulations that took effect in March 2017, an ALJ is not required to articulate how he or she considered evidence from nonmedical sources." *Stephan v. Kijakazi*, No. 22-cv-06021-SK, 2023 WL 7284144, at *9 (N.D. Cal. Nov. 3, 2023) (citing 20 C.F.R. § 416.920c(d)); *Melissa G. v. Kijakazi*, No. 21-CV-05803-SK, 2022 WL 4596623, at *7 (N.D. Cal. July 13, 2022) (same) (family members are lay witnesses). Thus, the ALJ did not have to give any germane or specific reasons for dismissing the third-party, nonmedical-source testimony.

### CONCLUSION

The court denies the plaintiff's motion for summary judgment and affirms the ALJ's decision. This resolves ECF Nos. 11 and 15.

**IT IS SO ORDERED.**

Dated: April 1, 2024

LAUREL BEELER
United States Magistrate Judge

---

[24] Mot. – ECF No. 11 at 22; Reply – ECF No. 16 at 6.
[25] Cross-Mot. – ECF No. 15 at 14–15.